IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMINAH HEARD,

                 Plaintiff,

    v.

J AND G SPAS, LLC,

                 Defendant.

CIVIL ACTION
NO. 22-3212

## OPINION

**Slomsky, J.**                                                              **October 9, 2024**

### TABLE OF CONTENTS

I.   **INTRODUCTION** ....................................................................................................3

II.  **FACTS** ....................................................................................................................4

    **A.**  **Testimony of Erace**..........................................................................................4

    **B.**  **Testimony of Plaintiff**......................................................................................5

III. **STANDARD OF REVIEW**....................................................................................5

IV. **ANALYSIS** ...........................................................................................................8

    **A.**  **An Award of Back Pay is Inconsistent with the Jury's Verdict
        and Evidence Presented by Plaintiff**..............................................................9

       1.  The Jury Did Not Find that Plaintiff Was Unlawfully Terminated............................9

       2.  Evidence Does Not Show that Defendant's Discrimination Resulted
          in Loss of Pay....................................................................................11

       3.  An Award of Back Pay Must be Consistent with the Jury's Verdict........................14

**B.   Statutory Purpose of the ADA is Not Undermined by**
**Not Awarding Back Pay**................................................................15

   1.   The Jury Did Not Find That Defendant Intentionally Discriminated
Against Plaintiff ........................................................................15

   2.   Plaintiff's Requested Award of Back Pay Would Make Plaintiff
More than Whole..........................................................................18

**V.   CONCLUSION** ........................................................................19

## I.       INTRODUCTION

On August 12, 2022, Plaintiff Aminah Heard ("Plaintiff" or "Heard") filed suit against Defendant J and G Spas, LLC ("Defendant" or "J and G Spas").  (Doc. No. 1.)  On September 12, 2023, Plaintiff filed an Amended Complaint, the operative Complaint in this matter.  (Doc. No. 24.)  In the Amended Complaint, Plaintiff alleges violations of four statutes: (1) 42 U.S.C. § 1981 ("Section 1981") ("Count I"); (2)   42 U.S.C. § 2000e-5 ("Title VII") ("Count II"); (3) the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") ("Count III"); and (4) the Pennsylvania Human Relations Act, 43  P.S. § 951, et seq. ("PHRA") ("Count IV").  (See id.)

On April 17, 2024, trial commenced.  It concluded on April 22, 2024.  (See Doc. Nos. 59, 66.)  On that day, the jury found in favor of Plaintiff only on Count III, a violation of the ADA for failure to accommodate Plaintiff and awarded her $500 in compensatory damages.  (Doc. No. 67.)  In reaching its verdict, the jury was not tasked with deliberating on an award of back pay or front pay, which is for the Court to decide.  (See Doc. No. 66.)

On May 3, 2024, Plaintiff filed the present Motion to Alter Judgment to Include Court-Determined Economic Loss (the "Motion").  (Doc. No. 69.)  On May 10, 2024, Defendant filed a Response in Opposition.  (Doc. No. 71.)  On May 17, 2024, Plaintiff filed a Reply.  (Doc. No. 73.)  On May 20, 2024, Defendant filed a Sur-Reply in Further Opposition.  (Doc. No. 75.)

On August 9, 2024, a hearing was held on economic loss.  (Doc. No. 78.)  At the hearing, Plaintiff only requested an award of back pay from April 18, 2021 to August 5, 2021, a period of about three and a half (3.5) months, in an amount totaling $16,485.  (Doc. No. 86 at 6:21-24, 7:2-3.)  However, in her Supplemental Memorandum submitted after the economic loss hearing, Plaintiff amended her back pay request to $15,742.37.  (Doc. No. 89 at 12.)

At the conclusion of the hearing, the Court requested the parties submit supplemental memoranda on economic loss.  (Doc. No. 80.)  On September 25, 2024, Plaintiff submitted a

Memorandum of Economic Loss.  (Doc. No. 89.)  Also on September 25, 2024, Defendant submitted a Memorandum in Opposition to Plaintiff's Request for Economic Loss Damages. (Doc. No. 88.)

For the following reasons, Plaintiff's Motion to Alter Judgment to Include Court-Determined Economic Loss (Doc. No. 69) will be denied.

## II.    FACTS

At the hearing on economic loss held on August 9, 2024, two (2) witnesses testified: (1) Bryn Erace ("Erace"), a co-owner of Defendant J and G Spas, LLC and (2) Plaintiff Aminah Heard.

### A.  Testimony of Erace

At the loss hearing, Erace testified that her husband owns J and G Spas, LLC and that she does the "accounting, accounts payable, [and] accounts receivable" for the spa.  (Doc. No. 86 at 26:19-20.)  Through her accounting work, Erace sees the salaries of Defendant's employees.  (Id. at 26:22-24.)  As such, Erace approximated that an average, full-time massage therapist at J and G Spas can make between $45,000 and $65,000 a year.  (Id. at 27:5-6, 12.)  Erace characterized Plaintiff as a good, rather than average, massage therapist, but noted that Plaintiff only worked part-time so she would have made less than a full-time therapist.  (Id. at 25:16-21, 27:9.)  Erace was unable to approximate how much Defendant paid its part-time massage therapists in 2021. (Id. at 27:17-24.)

Erace further testified that Plaintiff worked for Defendant from January 2021 until she was terminated on April 18, 2021.  (Id. at 31:9.)  Erace expressed surprise at Plaintiff's testimony that it took Plaintiff over three months to find a new job as a massage therapist after she was terminated by Defendant.  (Id. at 29:18-21.)  Erace explained that female, licensed massage therapists such as Plaintiff are in high demand, even in 2021 during the COVID-19 pandemic,

and opined that it should have taken Plaintiff one day to find a new job rather than three and a half months.  (<u>Id.</u> at 29:23-25, 30:1-24.)  Erace also testified that Defendant did not take any action to prevent Plaintiff from obtaining a job as a licensed massage therapist following Plaintiff's termination.  (<u>Id.</u> at 36:19-22.)

### B.  Testimony of Plaintiff

At the loss hearing, Plaintiff testified that her typical schedule while working for Defendant was to work four to five days per week and perform six massages a day.  (<u>Id.</u> at 11:16-24.) Following her termination from Defendant on April 18, 2021, Plaintiff testified that she was unemployed for "about three and a half months" before obtaining employment on August 5, 2021 at the Hand & Stone Spa in Willow Grove, Pennsylvania.  (<u>Id.</u> at 12:2-16.)  Plaintiff claimed that during her job search following her termination from Defendant's spa, Defendant's Regional Operations Manager "blackball[ed] me out of obtaining further employment."  (<u>Id.</u> at 38:19-20.)

While employed with Defendant, Plaintiff testified that she worked between twenty (20) to thirty (30) hours per week and made "around $21 and some change" an hour.  (<u>Id.</u> at 10:5-14.) She further testified that she typically received a tip "around 20 percent of [the] service charge" on each service she performed.  (<u>Id.</u> at 10:22-23.)  On cross-examination, Plaintiff agreed that the commissions and tips she made working for Defendant were wages reported to the Internal Revenue Service.  (<u>Id.</u> at 13:8-10.)  She further agreed that her 2021 W-2 from Defendant reported her gross pay as $7,350.82.  (<u>Id.</u> at 15:13-17.)

### III.   STANDARD OF REVIEW

As noted, in her Amended Complaint, Plaintiff asserted that Defendant breached four statutes: (1) Title VII, (2) Section 1981, (3) the Pennsylvania Human Relations Act ("PHRA"), and

(4) the Americans with Disabilities Act ("ADA").  Plaintiff prevailed only on her failure to accommodate claim under the ADA.  (See Doc. No. 66.)

"A plaintiff alleging employment discrimination under the ADA has the same remedies as provided by the 1964 Act [Title VII]."[1]  Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 315 n.3 (3d Cir. 2006) (citing 42 U.S.C. § 12117(a)).  The ADA permits a plaintiff to seek back pay.  See id.

> Specifically, Title VII provides that:
>
> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.  Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

42 U.S.C. § 2000e-5(g)(1).

Back pay "is not an automatic or mandatory remedy, but one which the courts may invoke at their equitable discretion."  Donlin v. Phillips Lighting North America Corp., 581 F.3d 73, 84 (3d Cir. 2009) (internal quotation marks omitted) (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 415 (1975)).  "The relevant time period for calculating an award of back pay begins with

---

[1] As noted supra, back pay is an available remedy under the ADA, as set forth in 42 U.S.C. § 12117(a), which provides that "[t]he powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment."  42 U.S.C. § 12117(a).

wrongful termination and ends at the time of trial." Dejesus v. Kids Acad., Inc., No. 18-13822, 2020 WL 1921934, at *10 (D.N.J. Apr. 21, 2020) (internal quotation marks omitted) (quoting Blum v. Witco Chem. Corp., 829 F.2d 367, 373-74 (3d Cir. 1987)).  The purpose of awarding back pay is to make a prevailing plaintiff whole following an act of intentional discrimination.  Donlin, 581 F.3d at 84 (citing Loeffler v. Frank, 486 U.S. 549, 558 (1988)).  However, if the plaintiff is subsequently able to secure a position "that is equivalent or better than the position she was wrongly denied, the right to damages ends because it is no longer necessary to achieve an equitable purpose . . . ." Id. (citing Ford Motor Co. v. EEOC, 458 U.S. 219, 236 (1982)).

Further, a plaintiff who succeeds at trial under the ADA still has "a statutory duty to mitigate damages."  Booker v. Taylor Milk Co., 64 F.3d 860, 864 (3d Cir. 1995).  This statutory duty, found in Title VII and applicable to the ADA, provides: "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."  42 U.S.C. § 2000e-5(g)(1).

The employer, by contrast, "has the burden of proving a failure to mitigate."  Booker, 64 F.3d at 864 (citations omitted); Donlin, 581 F.3d at 89 (citation omitted).  This burden requires an employer to establish that: (1) "substantially equivalent work was available" and (2) "the [ADA] claimant did not exercise reasonable diligence to obtain employment."  Id. (citation omitted).

Substantially equivalent work is defined as "employment which affords virtually identical promotional opportunities, compensation, job responsibilities, and status as the position from which the Title VII claimant has been discriminatorily terminated."  Booker, 64 F.3d at 866 (internal quotation marks and citations omitted).  Reasonable diligence "should be evaluated in the light of the individual characteristics of the claimant and the job market," which often includes reviewing "the economic climate and the employee's skills, qualifications, and age."  A plaintiff

typically exhibits reasonable diligence "by demonstrating a continuing commitment to be a member of the work force and by remaining ready, willing, and available to accept employment." Id. at 865 (citations omitted); Tubari Ltd. v. NLRB, 959 F.2d 451, 454 (3d Cir. 1992) (citation omitted). It is expected that a plaintiff will "exercise good faith in attempting to secure a position." Booker, 64 F.3d at 865 (citation omitted).

An employer, however, may satisfy its burden of establishing a failure to mitigate without proving that there was substantially equivalent work available. Caufield v. Ctr. Area School Dist., 133 F. App'x 4, 11 (3d Cir. 2005) (citing Tubari, 959 F.2d at 454). An employer may do so by demonstrating that the terminated employee "withdrew entirely from the employment market." Id. "A withdrawal from the employment market or '[a] willful loss of earnings' has been found where the plaintiff 'has failed to stay in the labor market, refused to accept comparable employment, failed to search diligently for other work, or voluntarily quit alternative employment without cause.'" Lienhard v. CHC Sols., Inc., No. 21-3230, 2023 WL 4237076, at *4 (quoting Holocheck v. Luzerne Cnty. Head Start, Inc., No. 04-2082, 2007 WL 954308, at *15 (M.D. Pa. Mar. 28, 2007)). This alternative burden requires proof that the terminated employee withdrew "completely," a burden that "is more onerous than establishing a plaintiff's job search was not reasonably diligent." Id. at *5 (quoting Caulfield, 133 F. App'x at 11; Ngai v. Urban Outfitters, Inc., No. 19-1480, 2021 WL 1175155, at *20 (E.D. Pa. Mar. 29, 2021)) (emphasis in original).

## IV.    ANALYSIS

Plaintiff seeks an award of back pay for a three-and-a-half-month period, totaling $15,742.37. (Doc. No. 89 at 12.) Plaintiff argues that such an award is warranted because Plaintiff prevailed at trial when the jury found disability discrimination based on Defendant's failure to accommodate Plaintiff's disability. (Doc. No. 73 at 2.) In support of her Motion, Plaintiff relies

on <u>Ellis v. Ethicon, Inc.</u>, 529 F. App'x 310, 311 (3d Cir. 2013) (affirming the award of back pay to a plaintiff who prevailed on a failure to accommodate claim where the defendant's failure to accommodate the plaintiff's disability resulted in her effective discharge), <u>Lett v. SEPTA</u>, No. 19-3170-KSM, 2022 U.S. Dist. LEXIS 175719, at *56 (E.D. Pa. Sept. 27, 2022) (awarding the plaintiff back pay after finding that the defendant constructively discharged the plaintiff and did not provide the plaintiff a reasonable accommodation under the PHRA), and <u>Masterson v. 3 Runyon</u>, CIVIL ACTION No. 93-6878, 1994 U.S. Dist. LEXIS 16674, at *33 (E.D. Pa. Nov. 17, 1994) (awarding the plaintiff back pay following the court's finding that the "plaintiff was discharged solely because of her [disability]").  (<u>Id.</u> at 3-4.)

Defendant argues to the contrary that economic loss damages such as back pay should not be awarded because Plaintiff only prevailed on her failure to accommodate claim.  (Doc. No. 71-1 at 7.)  In this regard, the jury did not find that Defendant unlawfully terminated Plaintiff.  (<u>Id.</u>)  In particular, Defendant notes that:

> "The appropriate standard for the measurement of a back pay award is to take the difference between the actual wages earned and the wages the individual would have earned in the position that, but for discrimination, the individual would have attained." <u>Gunby v. Pa. Elec. Co.</u>, 840 F.2d 1108, 1119-20 (3d Cir. 1988), internal citations omitted.  <u>See also</u>, Comments to MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE THIRD CIRCUIT § 9.4.3 (2023 Ed.).  In the case at bar, the jury found that J&G did not terminate Plaintiff's employment for any discriminatory reason, therefore there are no wages that Plaintiff would have attained but for discrimination and as such any claim for back pay is moot and fails.

(<u>Id.</u>)

## A. An Award of Back Pay is Inconsistent with the Jury's Verdict and Evidence Presented by Plaintiff

### 1. The Jury Did Not Find that Plaintiff Was Unlawfully Terminated

By their verdict, the jury found that Defendant committed disability discrimination by failing to accommodate Plaintiff's disability.  (Doc. No. 66.)  However, the jury did not find that

Plaintiff was unlawfully terminated in violation of the ADA.  (Id.)  Thus, an award of back pay is not warranted from the date of Plaintiff's termination on April 18, 2021.

Awards of back pay are typically calculated from the date of the unlawful termination to the time of trial.  See Blum v. Witco Chem. Corp., 829 F.2d 367, 373 (3d Cir. 1987) (quoting Berndt v. Kaiser Aluminum & Chem. Sales, Inc., 604 F. Supp. 962, 964 (E.D. Pa. 1985), aff'd, 789 F.2d 253 (3d Cir. 1986)); see also Phillips v. Starbucks Corp., No. CV 19-19432, 2023 WL 5274541, at *6 (D.N.J. Aug. 16, 2023); Satterwhite v. Smith, 744 F.2d 1380, 1381 n. 1 (9th Cir. 1984) ("[A]n employee who quits cannot secure back pay unless his employer constructively discharged him.")

Here, the jury was presented with a verdict sheet that gave the jury the opportunity to find Defendant liable under four statutes: Title VII, Section 1981, the ADA, and the PHRA.  The jury answered "no" when asked the following questions:

1. Has Plaintiff proven by a preponderance of the evidence under Title VII and the PHRA that her race was a determinative factor in Defendant's decision to terminate her employment?

2. Has Plaintiff proven by a preponderance of the evidence under Title VII and the PHRA that her race was a motivating factor in Defendant's decision to terminate her employment?

3. Has Defendant proven by a preponderance of the evidence under Section 1981 that her race was a determinative factor in Defendant's decision to terminate her employment?

4. Has Plaintiff proven by a preponderance of the evidence under the ADA and the PHRA that her disability was a determinative factor in Defendant's decision to terminate her employment?

5. Has Plaintiff proven by a preponderance of the evidence under the ADA and the PHRA that her disability was a motivating factor in Defendant's decision to terminate her employment?

* * *

10

      7.  Has Plaintiff proven by a preponderance of the evidence under the ADA and the PHRA that <u>Defendant terminated Plaintiff's employment</u> in retaliation for her request for a reasonable accommodation?

(<u>See</u> Doc. No. 66 at 1-3) (emphasis added).  The jury answered "yes" only to the following question and awarded Plaintiff compensatory damages of $500:

      6.  Has Plaintiff proven by a preponderance of the evidence under the ADA that Defendant <u>committed disability discrimination</u> by failing to provide her with a reasonable accommodation?

(<u>See</u> <u>id.</u> at 3) (emphasis added).  Therefore, by the verdict rendered in this case, the jury rejected any claim that Plaintiff was unlawfully terminated by Defendant based upon her race or disability or terminated her in retaliation for her request for a reasonable accommodation.

    **2.**  **Evidence Does Not Show that Defendant's Discrimination Resulted in Loss of Pay**

When a plaintiff is subject to unlawful discrimination by a defendant's failure to accommodate her, even when there is no unlawful termination, a court must still determine whether an award of back pay is warranted in this situation.  If the plaintiff was not unlawfully terminated, back pay is determined by comparing "(1) the amount the plaintiff actually earned while being subjected to the employer's discrimination, and (2) the amount that the plaintiff would have earned in the absence of any discrimination."  <u>Howe v. City of Akron</u>, 801 F.3d 718, 746 (6th Cir. 2015); <u>Derr v. Gulf Oil Corp.</u>, 796 F.2d 340, 342 (10th Cir. 1986) (calculating back pay based upon the "difference in pay between what she earned as an accounting clerk [subject to discrimination] and what she would have earned as an associate lease analyst [absent discrimination] until she resigned"); <u>Wells v. N.C. Bd. of Alcoholic Control</u>, 714 F.2d 340, 342 (4th Cir. 1983) (holding the plaintiff was entitled to a back pay award "from the time he was wrongfully denied the promotion he sought").

However, an award of back pay is not warranted when a defendant's failure to accommodate the plaintiff's disability does not result in a loss of pay or discharge.[2] See Holmes v. Wal-Mart Stores East, L.P., No. 1:10CV75, 2011 WL 1842868, at *8 (E.D. Va. Apr. 27, 2011). In Holmes, the court found that every failure to accommodate claim does not give rise to back pay or reinstatement:

> Similar to a situation where an employer creates a hostile work environment, an employer's failure to accommodate may simply make working conditions more difficult and not result in lost pay or discharge. Under those circumstances, an employer's failure to accommodate does not entitle a plaintiff to back pay and reinstatement. See Johnson, 991 F.2d at 130. Since lost pay and discharge are not at issue, back pay and reinstatement would not make a plaintiff whole.

Id. The court in Holmes also discussed the Fourth Circuit Court of Appeals holding in Johnson v. Shalala, 991 F.2d 126 (4th Cir. 1993), where a district court had awarded the plaintiff back pay following a finding of failure to accommodate and constructive discharge. Id. The Fourth Circuit reversed the back pay award, holding that, while the government had failed to accommodate the plaintiff, the facts failed to support a claim of constructive discharge. Id. Observing this decision, the Holmes court reasoned:

---

[2] Plaintiff relies on cases in which a plaintiff was constructively discharged or effectively terminated based upon a failure to accommodate plaintiff's disability. When a plaintiff is constructively discharged or effectively terminated based upon a defendant's failure to accommodate plaintiff's disability, courts find an award of back pay appropriate. See Ellis v. Ethicon, 529 F. App'x 310, 311 (3d Cir. 2013) (affirming the award of back pay to a plaintiff who prevailed on a failure to accommodate claim where the defendant's failure to accommodate the plaintiff's disability resulted in her effective discharge); see also Lett v. Septa, No. CV 19-3170-KSM, 2022 WL 4542093, at *22-23 (E.D. Pa. Sept. 27, 2022) (awarding the plaintiff back pay after finding that the defendant constructively discharged the plaintiff and did not provide the plaintiff a reasonable accommodation under the PHRA); Masterson v. Runyon, No. CIV. A. 93-6878, 1994 WL 675268, at *10 (E.D. Pa. Nov. 17, 1994) (awarding the plaintiff back pay following the court's finding that the "plaintiff was discharged solely because of her [disability]"). Here, the jury did not find that Plaintiff was constructively discharged or effectively terminated because of her disability or race. Thus, the cases relied on by Plaintiff are inapposite.

> [w]ere a mere failure to accommodate sufficient to allow a plaintiff to recover back pay . . ., the Fourth Circuit would not have reversed the judgment in Shalala . . . the fact that the Fourth Circuit reversed the district court's judgment suggests that, like hostile work environment claims, failure to accommodate claims do not entitle a plaintiff to recover back pay . . . unless the failure to accommodate causes a loss of pay or discharge.

Id.

Here, there is no evidence that the discrimination for failure to accommodate found by the jury resulted in any loss of pay to Plaintiff.  Her testimony at the economic loss hearing focused on her hourly rate and the tips she made while working for Defendant.  (See Doc. No. 86 at 10:5-14, 10:22-23, 15:13-17.)  Plaintiff did not testify, and Plaintiff's counsel did not argue, that the amount of money Plaintiff made at J and G Spas would have been different had Defendant accommodated Plaintiff's disability.

Moreover, in her Supplemental Memorandum submitted after the economic loss hearing, rather than present evidence of the difference in pay Plaintiff would have made had Defendant accommodated Plaintiff's disability, Plaintiff merely continues to argue that back pay from April 18, 2021 through August 5, 2021 is warranted. (See Doc. No. 89.) While Plaintiff does explain that her request "for a reasonable accommodation from [Defendant] in the form of a rolling cart to help her perform hot stone massages . . . would have allowed her to work more hours," she does not estimate how many more hours she would have worked had Defendant accommodated her request.  (Id. at 12-13.)  Even if she had made such an estimate, awards of back pay cannot be based on "mere speculation about what she would have earned in the absence of discrimination." Pickens v. Se. Pa. Transp. Auth., No. 15-1489, 2017 WL 3722427, at *3 (E.D. Pa. Aug. 29, 2017) (quoting Szeinbach v. Ohio State Univ., 820 F.3d 814, 824 (6th Cir. 2016), cert. denied, 137 S. Ct. 198 (2016)) (declining to award overtime back pay because "the question of whether [the plaintiff] would have earned any overtime is entirely too speculative to impose additional damages for such

hypothesized work").  Accordingly, without evidence that Defendant's failure to accommodate Plaintiff's disability resulted in a loss of pay, an award of back pay is not warranted.

### 3.  An Award of Back Pay Must be Consistent with the Jury's Verdict

Additionally, a back pay award must be in accordance with the jury's verdict.  See Pals v. Schepel Buick & GMC Truck, Inc., 220 F.3d 495, 501 (7th Cir. 2000) ("[W]hen assessing back pay, or awarding front pay in lieu of reinstatement, the judge must respect the findings implied by the jury's verdict."); see also In re Lewis, 845 F.2d 624, 630 (6th Cir. 1988) (holding the lower court erred as a matter of law when resolving claims for equitable relief under Title VII by making factual findings inapposite to those already determined by a jury).

For example, in Voeltz v. Arctic Cat, Inc., the jury was instructed on claims of failure to provide a reasonable accommodation and disparate treatment under the ADA.  406 F.3d 1047, 1050 (8th Cir. 2005).  The jury found for the plaintiff on the reasonable accommodation claim. See id.  On the disparate treatment claim, the jury found that the plaintiff's disability was a motivating factor in the adverse employment action.  See id.  However, the jury also found that the defendant would have made the same decision even without a consideration of his disability. See id.  Because the defendant prevailed on the "same decision" defense, no compensatory or back pay damages were available.  See id. (citing Pedigo v. P.A.M. Transp., Inc., 60 F.3d 1300, 1301 (8th Cir. 1995)).

Despite the jury's verdict, the district court in Voeltz awarded plaintiff front pay damages. See id.  The Eighth Circuit Court of Appeals vacated the award of front pay, noting that "in fashioning equitable relief, the district court . . . may not base its decision on factual findings that conflict with the jury's findings."  Id. at 1052.  Because the jury found that the defendant would have made the same adverse employment decision even without considering the plaintiff's

14

disability, the plaintiff was not entitled to front pay because the plaintiff "would not have been working [for the defendant] regardless of his disability." Id.; see also Ellis, 529 F. App'x at 311 (affirming award of back pay when jury recommended award of back pay by their verdict).  It would follow a fortiorari that the same reasoning applies to back pay.

Here, an award of back pay calculated between April 18, 2021 and August 5, 2021 would not respect the findings evident from the jury's verdict.  The jury heard extensive evidence regarding the nature and circumstances of the incident at J and G Spas that led to Plaintiff's termination.  In rendering its verdict, it did not find that Plaintiff was unlawfully terminated based upon her being in any alleged protected class.  Thus, as in Voeltz, it would be inappropriate to award back pay from the time of termination because Plaintiff "would not have been working [for Defendant] regardless of h[er] disability."  See Voeltz, 406 F.3d at 1052.  Accordingly, because Plaintiff has not provided sufficient evidence regarding the difference between what she would have made if provided a cart as an accommodation and what she actually made absent the accommodation, and because the jury did not find unlawful termination, the requested back pay award would be inconsistent with the jury's verdict.

### B.  Statutory Purpose of the ADA is Not Undermined by Not Awarding Back Pay

#### 1.  The Jury Did Not Find That Defendant Intentionally Discriminated Against Plaintiff

As noted supra, the ADA provides for an award of back pay according to the following terms:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case

may be, responsible for the unlawful employment practice), or any other equitable
relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1) (emphasis added).   The ADA defines an "unlawful employment

practice" as an employer acting in either of the following ways:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to
> discriminate[s] against any individual with respect to his compensation, terms,
> conditions, or privileges of employment, because of such individual's race, color,
> religion, sex, or national origin; or (2) to limit, segregate, or classify his employees
> or applicants for employment in any way which would deprive or tend to deprive
> any individual of employment opportunities or otherwise adversely affect his status
> as an employee, because of such individual's race, color, religion, sex, or national
> origin.

42 U.S.C. § 2000e-2(a) (emphasis added).   Accordingly, by a plain reading of these statutes

together, back pay under the ADA is appropriate where an employer has intentionally engaged in

discrimination against any individual because of their race, color, religion, sex, or national origin.

Said differently, an award of back pay requires a finding of intentional discrimination by the

employer.

Here, the jury returned a verdict finding liability on only one claim:   failure to

accommodate under the ADA.   A defendant violates the ADA when it fails to make "reasonable

accommodations to the known physical or mental limitations of an otherwise qualified individual

with a disability who is an applicant or employee, unless such covered entity can demonstrate that

the accommodation would impose an undue hardship on the operation of the business of such

covered entity."   42 U.S.C. § 12112(b)(5)(A).   A failure to accommodate claim is unique from

other claims under the ADA or Title VII in that it does not require a finding of intentional

discrimination.   See Doe v. Triangle Doughnuts, LLC, 472 F. Supp. 3d 115, 141 n. 31 (E.D. Pa.

2020) (internal citations and quotations omitted) ("[U]nlike other discrimination claims, failure to

accommodate claims do not require that an employer's action be motivated by discriminatory

animus directed at the disability . . . ."); <u>see also</u> <u>Punt v. Kelly Servs.</u>, 862 F.3d 1040, 1048 (10th Cir. 2017) ("There is at least one type of ADA claim, however, which does not require any evidence of discriminatory intent, whether direct or circumstantial: a failure to accommodate claim."); <u>Carmichael v. Verso Paper, LLC</u>, 679 F. Supp. 2d 109, 132-33 (D. Me. 2010) ("[I]ntentional discrimination is not required to prove a failure to accommodate [claim]."). Unlike disparate treatment or retaliation claims, a claim for failure to accommodate under the ADA may be proven by the mere failure of the defendant to engage in the interactive process in good faith and the further failure to provide a reasonable accommodation that would not be an undue hardship.

Thus, Plaintiff was not required to produce any evidence of discriminatory intent to prevail on her failure to accommodate claim. When this Court instructed the jury, it noted that Plaintiff had to prove that Defendant intentionally discriminated against Plaintiff based on race or disability to prevail on its race or disability discrimination claims under Title VII, the ADA, Section 1981, and the PHRA. By its verdict, however, the jury rejected the notion that Plaintiff was terminated because Defendant intentionally discriminated against her. It did not find any liability on claims where a finding of intentional discrimination was required. The jury, however, did return a finding of liability on the failure to accommodate claim, and the jury instructions for this claim included no mention of intentional discrimination. Based upon the verdict, this Court will not make a factual finding of intentional discrimination that is inapposite to those facts found by the jury. To do so would diminish the jury's role and would be inconsistent with the plain language of Title VII and the ADA. Accordingly, because no intentional discrimination was proven at trial, an award of back pay would be inappropriate.

### 2. Plaintiff's Requested Award of Back Pay Would Make Plaintiff More than Whole

The purpose of awarding back pay under the ADA is to make "persons whole for injuries suffered through past discrimination." Booker v. Taylor Milk Co., 64 F.3d 860, 864 (3d Cir. 1995). However, back pay is not a remedy which should "provide a windfall to the employee." Clarke v. Frank, 960 F.2d 1146, 1151 (2d Cir. 1992). Nor should a back pay award make a prevailing plaintiff more than whole. See Hilliard v. Twin Falls Cnty. Sheriff's Off., No. 1:18-CV-00550-CWD, 2021 WL 1950015, at *4 (D. Idaho May 14, 2021) ("The remedial relief provided under the anti-discrimination statutes is intended to award damages in an amount that will make Plaintiff whole, but not more than whole, considering Plaintiff's efforts to mitigate his damages with reasonable diligence and other relevant factors.")

Here, an award of back pay for the three-week period between the time Plaintiff requested the cart accommodation and the date of Plaintiff's termination on April 18, 2021 would be appropriate and would make Plaintiff whole for the injuries she suffered through Defendant's failure to accommodate her cart request. To reiterate, an award of back pay estimates the difference in pay between what Plaintiff would have made absent the unlawful discrimination and what she in fact made while she did not have the accommodation. However, Plaintiff did not present evidence regarding the discrepancy in pay during this critical three-week period. Instead, Plaintiff seeks back pay for a three-and-a-half-month period—from April 18, 2021, the date of Plaintiff's termination from J and G Spas, to August 5, 2021, the date Plaintiff secured another job. But as discussed above, because the jury found that Plaintiff was not unlawfully terminated from J and G Spas, an award of back pay for the period following Plaintiff's termination would be inconsistent with the jury's verdict. Moreover, because Plaintiff is only entitled to an award of back pay for the three-week period during which Defendant failed to accommodate her request for

a cart, an award of back pay for a three-and-a-half-month period would make Plaintiff more than whole.  Accordingly, the requested back pay will not be awarded to Plaintiff.

**V.     CONCLUSION**

For the stated reasons, Plaintiff's Motion to Alter Judgment to Include Court-Determined Economic Loss (Doc. No.  69) will be denied.  An appropriate Order follows.