IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMINAH HEARD,

                Plaintiff,

     v.

J AND G SPAS, LLC,

                Defendant.

CIVIL ACTION
NO. 22-3212

**OPINION**

**Slomsky, J.**                                     **October 10, 2024**

**TABLE OF CONTENTS**

I.     **BACKGROUND** ........................................................................................... 4

II.    **STANDARD OF REVIEW** ........................................................................ 7

III.   **ANALYSIS** ................................................................................................. 9

    **A.  Plaintiff is Entitled to Reasonable Attorneys' Fees** ..................................... 10

      1.  Plaintiff is a Prevailing Party ........................................................... 11

      2.  Calculation of the Lodestar ............................................................. 14

          a.  Reasonable Hourly Rate ........................................................ 14

          b.  Number of Hours Reasonably Expended ............................................ 18

              i.  Unsuccessful Claims .................................................... 20

              ii.  Excessiveness and Unnecessary Work ...................................... 22

      3.  The Lodestar will be Reduced by 30% to Account for Plaintiff's
          Limited Success ............................................................................. 27

1

**B.  Plaintiff is Entitled to Reasonable Costs Incurred**.......................................................... 29

**IV.  CONCLUSION** ............................................................................................................. 30

## I.    INTRODUCTION

On September 12, 2023, Plaintiff Aminah Heard filed an Amended Complaint in this suit against Defendant J and G Spas, LLC, d/b/a Hand and Stone Massage and Facial Spa ("Defendant"), alleging that she was unlawfully terminated based on race and disability, and that Defendant failed to accommodate her disability in violation of federal law.  (See Doc. No. 24.) She alleged the following claims:

- o race discrimination, in violation of 42 U.S.C. § 1981 ("Section 1981") ("Count I");

- o race discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") ("Count II");

- o disability discrimination, failure to accommodate her disability, and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") ("Count III");

- o race discrimination, in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA") ("Count IV");

- o disability discrimination and disability-related retaliation, in violation of the PHRA ("Count IV").

(See id.)[1]

A four (4) day trial ensued, beginning on April 17, 2024 and ending on April 22, 2024. (Doc. Nos. 59, 60, 61, 63.)  The jury returned a verdict finding Defendant liable on only a single claim: failure to provide an accommodation under the ADA (Count III).  (Doc. No. 66.)  The jury awarded Plaintiff $500 in compensatory damages on this claim.  No punitive damages were

---

[1]  In Plaintiff's Amended Complaint, she also alleges that she was subjected to: (1) a hostile work environment, in violation of Section 1981 ("Count I") and Title VII ("Count II") (2) race-based retaliation, in violation of Section 1981 ("Count I"), Title VII ("Count II") and a violation of the PHRA ("Count IV").  (See Doc. No. 24.)  However, before trial, Plaintiff stipulated to the dismissal of these claims.  (See Doc. Nos. 30 at 33, 42, 43.)

awarded.  (See id.)  On April 23, 2024, in accordance with the jury's verdict, the Court entered

judgment in favor of Plaintiff and against Defendant on the failure to accommodate claim in the

amount of $500.  (Doc. No. 67.)

On August 9, 2024, the Court held a hearing on the record to determine what economic

loss, if any, was warranted following the jury's verdict.  (Doc. No. 79.)  On October 9, 2024, the

Court entered an Opinion and Order denying Plaintiff's Motion to Alter Judgment (Doc. No. 69).

(Docs. No. 90, 91.)  In the Opinion and Order, the Court declined to award Plaintiff economic loss

damages because Plaintiff failed to mitigate her claims and the jury did not find that Plaintiff was

terminated for a discriminatory reason.  Before the Court is Plaintiff's Petition for Attorneys' Fees

and Costs.  (Doc. No. 68.)  For the following reasons, the Petition will be granted in part and denied

in part.

## I.   BACKGROUND

On May 3, 2024, Plaintiff filed her Petition for Attorneys' Fees and Costs.  (Doc. No. 68.)

The Petition seeks an award of $243,059.40 in attorneys' fees and $3,738 in costs.[2]  (See id. at 2.)

The following attorneys from The Lacy Employment Law Firm LLC ("LELF") comprised

Plaintiff's legal team: (1) Andrew Lacy ("Lacy"), and (2) Andrew Skelton ("Skelton").  (See Doc.

---

[2] Plaintiff's initial petition sought $239,209 in attorneys' fees and $3,738 in costs.  (See Doc. No.
68 at 2.)  However, in Plaintiff's Reply, she notes that

> Plaintiff has incurred additional attorney's fees in this matter through post-trial
> briefing.  Plaintiff expended an additional 16.4 hours on this reply brief as well.
> Relatedly, Plaintiff devoted another 7.8 [hours] on Plaintiff's reply brief to amend
> the judgment to include Plaintiff's economic loss.

(Doc. No. 72 at 10.)  With the supplemental hours, and a 5% fee reduction, Plaintiff seeks
$243,059.40 in attorneys' fees and $3,738 in costs.  (Id.)

No. 68-1 at 4.)  They attest that they spent a total of 630.4 hours working on Plaintiff's case.[3]  (See id. at 5.)

In the Motion, Plaintiff generally asserts that "this case was a success" and "LELF exceeded all expectations for [Plaintiff]."  (Id. at 4.)  In particular, Plaintiff first avers that as a prevailing party, she is entitled to attorneys' fees and costs based on her victory on the failure to accommodate claim.  (See id.)  Second, Plaintiff contends that she was "forced . . . to litigate this case until trial" which justifies receipt of all attorneys' fees and costs.[4]  (Id. at 5-6.)  Third, Plaintiff's counsel argues that "[Plaintiff's] case was undesirable" because of the risk inherent in contingency fee practice and the low amount of damages at issue.  (Id. at 8-9.)  Fourth, Plaintiff argues that she achieved an "excellent"—even "extraordinary" result at trial,[5] and that LELF exercised "sound legal judgment."  (Id. at 10, 13.)  Fifth, Plaintiff argues that social policy favors "encouraging attorn[ies] to take these types of cases."  (Id. at 13.)  Finally, Plaintiff contends that the fees she seeks are reasonable because both the hours submitted and hourly rates of Plaintiff's counsel are reasonable.  (See id. at 14-28.)  Specifically, Plaintiff argues that the hourly rate sought by Lacy is reasonable because it is comparable to the rate of Katherine Oeltjen, Esquire ("Oeltjen")

---

[3]  Plaintiff initially stated that her counsel spent a total of 620 hours working on the case, but in her Reply, this figure was supplemented with the work spent on Replies to Defendant's Responses to post-trial motions.  (See Doc. No. 72 at 10.)  Thus, the final total of hours expended is 630.4.  (See id.)

[4]  To support this point, Plaintiff argues that she made a "reasonable demand" of $40,000 dollars at the outset of litigation, and that Defendant's refusal to settle "created the problem [Defendant] now faces . . ."[4]  (Id. at 6-8.)  But the fact that Defendant did not settle does not transform her jury trial into one she was forced to litigate.  Plaintiff filed this suit and demanded a jury trial.  (See Doc. No. 24.)

[5]  As noted supra, Plaintiff achieved limited success at trial; she prevailed only on one out of seven claims.  As described infra, under the United States Supreme Court's holding in Hensley v. Eckerhart, such limited success warrants a significant reduction in attorneys' fees.  461 U.S. 424, 436 (1983).

at Console Mattiacci, LLC, another employment law firm that advocates for plaintiff-employees. (See id. at 18.)  Finally, LELF concedes that a 5% reduction in fees is warranted based upon Plaintiff's defeat on all race-based claims.  (Id. at 26.)

On May 10, 2014, Defendant filed a Response in Opposition.  (Doc. No. 70.)  Generally, Defendant argues that Plaintiff did not achieve an "extraordinary" result as Plaintiff contends, and for this reason, Plaintiff is not entitled to attorneys' fees.  (Doc. No. 70-1 at 10.)  To the contrary, Defendant asserts that Plaintiff has merely achieved a "de minimis" victory on a single claim and a nominal compensatory award of $500.  (Doc. No. 70-1 at 8-9.)  Defendant maintains that "there is no cognizable, compensable claim and [Plaintiff] was not telling the truth.  The jury agreed . . . "[6]  (Id. at 8.)  In support of Plaintiff's argument that no attorneys' fees are warranted in this case, Defendant relies on the United States Supreme Court's holding in Farrar v. Hobby, 506 U.S. 103, 115 (1992).  In Farrar, the Court noted that when only nominal damages are awarded, "the only reasonable fee is usually no fee at all."  (Id.)  Defendant argues that when compared to the nearly

---

[6] In support of this argument, Defendant points to trial evidence which shows that Plaintiff made false and inconsistent statements under oath, including:

1. Filing a false police report and seeking a Protection from Abuse Order with the Family Court of the Court of Common Pleas averring that she and Rose Sidner were in a romantic relationship, which she now denies, but admits the false statement.

2. Signing an Affidavit under penalties of perjury in support of her opposition to [Defendant's] Motion for Summary Judgment containing contradictory and inconsistent statements to her sworn deposition testimony and sworn testimony at the trial in this case; and

3. False statement she made on employment application dated January 12, 2023, which she signed and dated, stating she worked for [Defendant] for almost 3 years- despite this litigation, instead of the barely 6 months she was employed with [Defendant].

(Doc. No. 70-1 at 9-10.)

$345,000 in damages sought by Plaintiff in its Pre-Trial Memorandum (Doc. No. 48 at 5), the $500 compensatory award is "a mere pittance."  (Id. at 12.)  Thus, Defendant asserts that no attorneys' fees should be awarded to Plaintiff's counsel.  (See id.)

In the alternative, Defendant argues: "should the court find that Plaintiff's verdict is more than de minimis, Plaintiff's fee and costs award should be reduced substantially."  (Id. at 17.)  In particular, Defendant notes that the most important factor in the determining an attorneys' fee award is "the degree of the success obtained" and argues that Plaintiff achieved little success at trial.  (Id.) (citing Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)).  Defendant also challenges Plaintiff's counsels' proposed hourly rate, arguing that any comparisons using the hourly rates of attorneys at Console Mattiacci, LLC are misguided.[7]  (See id.)  Defendant also opposes the number of hours submitted by Plaintiff, arguing that Plaintiff has "inadequately document[ed] the hours claimed," that certain hours are excessive and "there is no designation as to the specific claims Plaintiff's counsel [worked] on."  (Id. at 20-23.)  Finally, Defendant argue that the costs should be reduced because they are excessive.  (See id. at 23.)

For the reasons stated below, Plaintiff's Petition (Doc. No. 124) will be granted in part and denied in part.

## II.    STANDARD OF REVIEW

Under the ADA, a prevailing party is permitted to recover an award of attorney's fees.  42 U.S.C. § 12205 ("the court or agency in its discretion, may allow the prevailing party [in a

---

[7] For example, Defendant argues that LELF's victory on a single claim at trial and Console Mattiacci, LLC's significant victory in Phillips v. Starbucks are not comparable.  (Doc. No. 70-1 at 17) (citing Phillips v. Starbucks Corp., No. CV 19-19432, 2023 WL 5274541, at *1 (D.N.J. Aug. 16, 2023)).  Defendant submits that the case in Phillips, "where the jury returned a $25 million dollar verdict for the plaintiff" "is entirely distinct from the case at bar" where the jury returned "a mere pittance of $500."  (Id.)

discrimination case] . . . a reasonable attorney's fee, including litigation expenses, and costs . . ."). A fee award "is within the district court's discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous." Loughner v. U. of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001) (quoting Pa. Environ. Def. v. Canon-McMillan, 152 F.3d 228, 232 (3d Cir. 1998)).  To obtain attorneys' fees, a plaintiff must establish that they are the prevailing party and that the requested fees are reasonable.  Hare v. Potter, 549 F. Supp. 2d 698, 702 (E.D. Pa. 2008) (citing Pino v. Locascio, 101 F.3d 235, 237 (2d Cir. 1996)).

Calculating attorneys' fees involves multiplying the number of hours reasonably expended on an action by a reasonable hourly rate.  Stover v. Riley, 30 F. Supp. 2d 501, 504 (E.D. Pa. 1998) (citing Hensley, 461 U.S. at 433).  The product of this calculus is called a "lodestar."  Id. (citing Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996)). In Clemens v. N.Y. Cent. Mut. Fire Ins. Co., the Third Circuit Court of Appeals explained how courts apply this formula:

> Under the lodestar method, '[t]he party seeking attorneys' fees has the burden to prove that its request . . . is reasonable.' Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  'When the applicant for a fee has carried [its] burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled.' Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001) (quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986)).  But courts 'have a positive and affirmative function in the fee fixing process, not merely a passive role.'  Id.  'In calculating the hours reasonably expended, a court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"'  Id. (quoting Pub. Interest Research Grp. of N.J. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995)).

903 F.3d 396, 400 (3d Cir. 2018).

A court's calculation of the lodestar amount does not end its inquiry on a fee application. McKenna v. City of Philadelphia, 582 F.3d 447, 455 (3d Cir. 2009).  In addition to reviewing the hours reasonably expended, the Court may "adjust a fee upward or downward based upon the

results obtained in a case." Id. (citing Hensley, 461 U.S. at 434).  This adjustment "should be taken independently of other adjustments and should be the first adjustment applied to the lodestar." Rode, 892 F.2d at 1183.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley, 461 U.S. at 435.  On the other hand, if a plaintiff achieved partial or limited success, the "hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Id. at 436.  In making this determination there is "no precise rule or formula" and the court may "identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." Id. at 436-437.

## III.    ANALYSIS

At trial, Plaintiff litigated under the following theories of liability: Title VII, Section 1981, the ADA, and the PHRA.  (See Doc. No. 66.)  However, Plaintiff was only successful on one claim: failure to accommodate Plaintiff's disability under the ADA.  The ADA permits a prevailing party to seek a reasonable award of attorneys' fees and costs.  See Lanni v. New Jersey, 259 F.3d 146, 148 (3d Cir. 2001) (citing 42 U.S.C. § 12205 ("the court or agency, in its discretion, may allow the prevailing party [in a discrimination case] . . . a reasonable attorney's fee, including litigation expenses, and costs . . .").  As noted by the United States Supreme Court in City of Riverside v. Rivera, such statutory fee shifting provisions ensure that all citizens have "effective access to the judicial process" as the "vast majority of victims of civil rights violations cannot afford legal counsel" and thus are "unable to present their cases to the courts."  477 U.S. 561, 576-77 (1986).

In its Response in Opposition, Defendant concedes that Plaintiff is a prevailing party, but contends that Plaintiff is not entitled to attorneys' fees because her victory was de minimis.  (See

Doc. No. 70-1 at 5-12.)  Defendant also argues in the alternative that if the Court determines Plaintiff's victory is more than de minimis, then her attorneys' fees and cost award should be greatly reduced.  (See id. at 12-18.)  For the reasons discussed infra, the Court agrees with Plaintiff that a reasonable award of attorneys' fees is appropriate because Plaintiff prevailed on her ADA claim at trial and was awarded compensatory damages by the jury.  The attorneys' fees and costs sought by Plaintiff, however, will be reduced as a consequence of her limited success.

### A.  Plaintiff is Entitled to Reasonable Attorneys' Fees

As noted, on May 3, 2024, Plaintiff filed her Petition for Attorneys' Fees and Costs, seeking $239,209 in attorneys' fees.  (See Doc. No. 68 at 2.)  In Plaintiff's Reply, she supplemented her initial sum based upon further work completed on the Reply, seeking the final sum sought is $243,059.40 in attorneys' fees.  (See Doc. No. 72 at 10.)

A district court has discretion when calculating the award of attorneys' fees under the ADA.  See Weisberg v. Riverside Twp. Bd. of Educ., 272 F. App'x 170, 174 (3d Cir. 2008).  In Hensley v. Eckerhart, the Supreme Court set forth a three-step analysis a court should follow in determining the award of attorneys' fees.  461 U.S. 424, 433 (1983); see also Lanni, 259 F.3d at 151 (applying Hensley to ADA claim).

First, only a prevailing party may be awarded attorneys' fees.  See Hensley, 461 U.S. at 433.  Second, when "determining the amount of a reasonable fee," the court should calculate the lodestar: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Id.  The lodestar "is presumed to be the reasonable fee."  Lanni, 259 F.3d at 149. Third, and finally, the court may adjust the fee upward or downward based upon other considerations, such as "limited success," per the court's discretion.  See Hensley, 461 U.S. at 434, 436-37.  The burden is on the party seeking the adjustment to show that it is necessary, as the

lodestar is presumptively reasonable.  See Rode, 892 F.2d at 1183.  The Court will analyze each step under Hensley seriatim.

### 1. Plaintiff is a Prevailing Party

First, Plaintiff must be a prevailing party.  See Hensley, 461 U.S. at 433.  A plaintiff is a prevailing party entitled to attorneys' fees and costs if that plaintiff has succeeded on "any significant issue in litigation which achieves some benefit the part[y] sought in bringing the suit." Id.

Defendant asserts that Plaintiff should be awarded no attorneys' fees because the victory at trial was "technical" and "de minimis." (Doc. No. 70-1 at 10-11.)  Relying on the United States Supreme Court's decision in Farrar v. Hobby, 506 U.S. 103, 112 (1992), Defendant concedes that Plaintiff is a prevailing party, but argues that Plaintiff's victory is akin to an award of nominal damages, and thus warrants no attorneys' fees.  (Id.)  For support, Defendant also relies on the decision in Velius v. Twp. Of Hamilton, 466 F.App'x 133 (3d Cir. 2012), arguing that the $500 compensatory damages award here is comparable to an award of nominal damages—a "technical victory that does not merit an award of attorneys' fees."  (Id. at 11) (quoting Velius, 466 F.App'x at 140-41).  Defendant also points to various courts in the Third Circuit in which they held that attorneys' fees were not warranted where plaintiff only achieved a technical, nominal victory.  (See id. at 11-12) (citing Yarnall v. Philadelphia Sch. Dist., 203 F. Supp. 3d 558 (E.D. Pa. 2016) (awarding no attorneys' fees when jury awarded $1.00 in nominal damages); Jordan ex rel. Arenas-Jordan v. Russo, No. CIV.A. 09-88, 2014 WL 869482 (W.D. Pa. Mar. 5, 2014) (same); Anderson v. City of Philadelphia, No. CIV.A. 11-4623, 2013 WL 1008062 (E.D. Pa. Mar. 14, 2013) (same)).

Defendant's argument compares apples to oranges.  It relies on cases where only nominal damages of $1.00 were awarded, not cases where the jury awarded the plaintiff compensatory

damages, albeit a small amount.  For example, in <u>Farrar</u>, the plaintiffs sued for $17 million in money damages, and the jury awarded the plaintiffs $1.00 in nominal damages.  506 U.S. at 107-08.  In vacating the lower court's award of attorneys' fees, the United States Supreme Court distinguished between nominal damages and instances where the plaintiff has proved an "actual, compensable injury" or "an essential element of his claim for monetary relief."  <u>Id.</u> at 115.  The Court stated as follows:

> A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party.  As we have held, a nominal damages award does render a plaintiff a prevailing party by allowing him to vindicate his 'absolute' right to procedural due process through enforcement of a judgment against the defendant.  <u>Carey</u>, 435 U.S. at 266.  In a civil rights suit for damages, however, the awarding of nominal damages also highlights the plaintiff's failure to prove actual compensable injury.  <u>Id.</u> at 254-64.   Whatever the constitutional basis for substantive liability, damages awarded in a § 1983 action 'must always be designed "to <u>compensate</u> <u>injuries</u> caused by the [constitutional] deprivation."'  <u>Memphis Community School Dist. v. Stachura</u>, 477 U.S. at 309 (quoting <u>Carey</u>, <u>supra</u>, 435 U.S., at 265) (emphasis and brackets in original).   When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, <u>see</u> <u>Carey</u>, <u>supra</u>, at 256-57, 264, the only reasonable fee is usually no fee at all.

<u>Id.</u> at 115.

Likewise, in <u>Velius v. Twp. Of Hamilton</u>, the Third Circuit Court of Appeals vacated the lower court's award of attorneys' fees in a case in which a jury awarded nominal damages of $1.00.  466 F.App'x at 135.  Similarly, the courts in <u>Yarnall</u>, <u>Carroll</u>, <u>Jordan</u>, and <u>Anderson</u> also dealt with awards of $1.00 in nominal damages, not compensatory damages.  <u>See</u> <u>Yarnall</u>, 203 F. Supp. 3d at 561 (no attorneys' fees awarded following an award of nominal damages of $1.00 per plaintiff and jury finding of no actual injury); <u>see also</u> <u>Carroll</u>, 2014 WL 2860994, at *46 (no attorneys' fees awarded when jury awarded $1.00 in nominal damages);  <u>Jordan ex rel. Arenas-Jordan</u>, 2014 WL 869482, at *21 (same); <u>Anderson</u>, 2013 WL 1008062, at *7 (same).

Nominal damages are uniquely different from compensatory damages. Compensatory damages seek to make the plaintiff whole following a compensable, actual injury. See Calhoun v. Yamaha Motor Corp., U.S.A., 216 F.3d 338, 347 (3d Cir. 2000). Nominal damages, on the other hand, provide a formal recognition of the denial of a constitutional or civil right, but do not award damages for a compensable injury. As the United States Supreme Court opined in Carey v. Piphus,

> Common-law courts traditionally have vindicated deprivations of certain 'absolute' rights that are not shown to have caused actual injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights.

435 U.S. 247, 266 (1978).

Here, Plaintiff successfully litigated a failure to accommodate claim under the ADA. (See Doc. No. 66.) As a result, the jury awarded Plaintiff $500 in compensatory damages. (See id.) By their verdict, the jury specifically answered in the affirmative to the following question:

> Has Plaintiff proven by a preponderance of the evidence that she suffered compensatory damages for disability discrimination as noted by a "Yes" response to one or more of [questions regarding liability on failure to accommodate]?

(Id. at 5.) When asked how much money they award Plaintiff as compensatory damages for violation of this federally protected right, the jury awarded $500. (Id. at 6.) The jury found that Plaintiff had suffered an actual, compensable injury, and it chose to award money damages. (See id.) Subsequently, judgment was entered in favor of Plaintiff on this claim.[8] Thus, Plaintiff's

---

[8] In its Sur-Reply, Defendant asks this Court to reduce the jury's award of $500 to $1.00 in light of the Third Circuit Court of Appeal's holding in Nicholas v. Pa. State Univ., 227 F.3d 133, 146 (3d Cir. 2000). That case is not on point here. In Nicholas, the Third Circuit reduced the jury's nominal damages award of $1,000 to $1.00 in accordance with United States ex rel. Tyrrell v.

victory was not a technical one akin to the nominal damages of $1.00 in <u>Farrar</u>, <u>Velius</u>, <u>Yarnall</u>, <u>Carroll</u>, <u>Jordan</u>, and <u>Anderson</u>.  Her compensatory award was based on more than the mere recognition of a deprivation of a federal right.  Accordingly, Plaintiff, as the prevailing party, is entitled to a reasonable award of attorneys' fees under the ADA.

### 2.  Calculation of the Lodestar

Second, the Court must calculate the lodestar amount by multiplying the reasonable hourly rate by the number of hours reasonably expended on the litigation.  <u>See Hensley</u>, 461 U.S. at 433.  "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." <u>Id.</u>  As the party requesting fees, Plaintiff bears the burden of proving that the requested fees are reasonable.  <u>Id.</u> at 437.  If Plaintiff meets this burden, then Defendant may challenge the petition for fees based upon specific objections.  <u>Rode</u>, 892 F.2d at 1183.  Without Defendant's specific objections, the Court is not permitted to decrease the fee award.  <u>See</u> <u>id.</u>

### a.  Reasonable Hourly Rate

First, Defendant disputes the hourly rates of Skelton and Lacy.  In support of this argument, Defendant notes that (1) "Counsel claims that their attorneys' fees of $500 and $315 are their 'typical rate' without submitting evidence of their typical rate;" (2) "the hourly rates for both Attorney[s] Skelton and Lacy are excessive in relation to hourly rates in Philadelphia;" (3) "this is further demonstrated by Plaintiff's counsel seeking an opinion from an attorney in Massachusetts to opine on the reasonableness of their attorneys' fees in Philadelphia;" and (4) "Plaintiff's counsel

---

<u>Speaker</u>, 535 F.2d 823, 830 (3d Cir. 1976), where the court held that nominal damages may not exceed $1.00.  227 F.3d at 146.  Here, the jury did not award nominal damages; it awarded compensatory damages.  Consequently, no reduction is necessary.

further submits the affidavit of Zakia Moore, Esquire in support of their Motion and she provides no basis for her conclusion that $500 per hour is a reasonable rate in Philadelphia for Mr. Lacy." (Doc. No. 70-1 at 20-21.)

When determining an appropriate hourly rate, "a court must assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Loughner, 260 F.3d at 180.  In general, "a reasonable hourly rate is calculated according to the prevailing market rates in the community." Washington, 89 F.3d at 1035.  The party seeking attorneys' fees has the burden to prove that its requested hourly rate is reasonable. See Rode, 892 F.2d at 1183.  The opposing party then has the "burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." Id. at 1183.

Plaintiff requests an hourly rate of $500 for Lacy.  (Doc. No. 68-1 at 18.)  Lacy, the founder of Lacy Employment Law Firm ("LELF"), has practiced law for approximately nine years, shifting his practice from Reed Smith, LLP to his work in employment law at LELF.  (See id. at 21.) During his career, Lacy has tried five jury trials to verdict as first chair.  (See id. at 20.)  Next, Plaintiff requests an hourly rate of $315 for Skelton.  (See id. at 22.)  Skelton has practiced law for three years.  (See id.)  Like Lacy, he began his practice at Reed Smith, and then left to join LELF and focus on employment law.  (See id.)  Skelton sat second chair at the trial where Plaintiff prevailed on her claim under the ADA.  (See id.)  Plaintiff asserts that both Lacy and Skelton's requested rate is consistent with historic billing, their usual billing rates, and the billing rates of other plaintiff-side employment attorneys in the Philadelphia area.  (See id. at 17-18.)  To support

these claims, Plaintiff points to Lacy and Skelton's declarations where they both attest that the requested rates are comparable to their regular hourly rates.  (See Doc. Nos. 68-16, 68-17.)

In particular support of Lacy's $500 requested rate, Plaintiff also submits the Declarations of Zakia Moore, Esquire ("Moore") and Vishal Shah, Esquire ("Shah"), both of whom represent plaintiff-employees in employment litigation.   (See Doc. Nos. 68-14, 68-15.)   In Moore's declaration, she attests that the requested rate "is not only a reflection of [Lacy's] qualifications and success rate but is also aligned with the current market rate for attorneys of his caliber and expertise."  (Doc. No. 68-14 at 3.)  In Shah's declaration, he submits that

> Based on [Lacy's] legal education, training within the large-firm environment, and his role within his own firm, I believe that [] Lacy's request for a $500.00 is highly reasonable and justified within the legal community, especially considering his exceptional experience relative to his years of practice. . . . For comparison, my current hourly rate at Shah Litigation, PLLC is $650.00, reflecting the market value for attorneys with our specialized skills and extensive experience.

(Doc. No. 68-15 at 3.)

In further support of Lacy's $500 rate, Plaintiff notes that Lacy's requested hourly rate is comparable to the $520 rate of Kate Oeltjen, Esquire ("Oeltjen"), who graduated within one year of Lacy and exclusively represents plaintiff employees at Console Mattiacci LLC.  (See Doc. No. 68-1 at 18.)  Plaintiff notes that while Oeltjen primarily handles discovery matters, Lacy is LELF's lead trial attorney, so his rate should be, at least, comparable to that of Oeltjen.  (See id.)  Plaintiff also adds that Oeltjen's rate was approved by the Third Circuit Court of Appeals.[9]  (See id.)

In addition to the submitted declarations and comparable attorney rates in Philadelphia, Plaintiff relies on the Community Legal Services ("CLS") rates for attorneys with Skelton and Lacy's experience.  (See id. at 21.)  Lacy's comparable CLS rate is $320 to $415, while Skelton's

---

[9] Plaintiff attests that Kate Oeltjen's rate was approved by the Third Circuit Court of Appeals, but she offers no citation to a particular case to support this argument.  (See Doc. No. 68-1 at 18.)

comparable CLS rate is $265 to $315.  (See id. at 21-23.)  Plaintiff submits that a rate slightly above or within the higher end of the CLS rate is warranted for both Skelton and Lacy because of their trial experience and handling of the case as the attorneys solely responsible for the case both at the summary judgment stage and at trial.  (See id.)

In its Opposition, Defendant contends that the hourly rates for Skelton and Lacy should be reduced because they are excessive and unsupported by specific bases for such an amount.  (See Doc. No. 70-1 at 20-21.)  For example, Defendant notes that Moore's affidavit "provides no basis for her conclusion that $500 per hour is a reasonable rate in Philadelphia for Mr. Lacy."  (Id. at 21.)

Here, Plaintiff has demonstrated that the requested hourly rates for Skelton and Lacy are reasonable.  For example, Lacy's Declaration attests:

> My current hourly rate is $550. The rate listed on my website is $275 per half-hour. I charge my non-contingency fee clients this rate and have had six clients agree to pay this rate in the past year. . . . As the founding partner of LELF, I command a higher market rate, as evidenced by multiple clients routinely paying my $550 hourly rate. My combination of credentials and status as a founding partner justify an above-market rate.

(Doc. No. 68-16 at 2-4.)  Likewise, Skelton's Declaration requests "a lodestar rate of $315 in this matter. I charge my clients $350 an hour at LELF, which is lower than the rate I billed during my time with Reed Smith LLP."  (Doc. No. 68-17 at 3.)  Such declarations are an appropriate starting point when determining a reasonable hourly rate, but the United States Supreme Court has opined that: "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984).

Here, Plaintiff submits the Declarations of Moore and Shah in further support of the requested hourly rates of Skelton and Lacy.  (See Doc. Nos. 68-14, 68-15.)  In addition, Plaintiff submits the current CLS rates for attorneys of Skelton and Lacy's years of experience.  The Court finds that Plaintiff's requested rates are consistent with the trial experience and credentials of Skelton and Lacy.  Lacy is LELF's founder and has led multiple jury trials as first chair.  Skelton, who sat second chair, conducted the direct examination of two trial witnesses and skillfully presented Plaintiff's closing argument with three years of experience out of law school. Accordingly, considering the CLS rates, the declarations, and evidence of comparable rates of plaintiff-side employment lawyers in the Philadelphia area, Plaintiff's requested rates are reasonable.

### b.  Number of Hours Reasonably Expended

In proposing a lodestar amount to guide the Court's analysis, Plaintiff submits that it expended 630.4 hours on the instant case.  (See Doc. Nos. 68-1 at 5; 72 at 10.)  Specifically, Plaintiff notes that (1) Lacy worked 309.6 hours and (2) Skelton worked 320.8 hours.  (See id. at 4-5.)  Plaintiff argues that "[t]he time that counsel spent preparing for trial contributed significantly to [Plaintiff's] result at trial."  (Id. at 15.)

Defendant contends that Plaintiff's hours are excessive, vague, and at times "inappropriately lumped together with no ability to distinguish between the claims counsel was working on (race, disability, reasonable accommodation, etc.)."  (Doc. No. 70-1 at 20-21.) Defendant argues that "this is crucial where[] . . .  Plaintiff only prevailed on one claim out of

twelve that she brought to trial[10] and also includes work on the three claims[11] she dismissed less than two weeks before trial." (Id.) As a result, Defendant requests that "the Court reduce Plaintiff's request for attorneys' fees substantially based on the level of Plaintiff's success." (Id.)

In Hensley, the Supreme Court opined that "fee applicants should exercise 'billing judgment' with respect to hours worked and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." 461 U.S. 424, 434 (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980)). A court must conduct a "thorough and searching analysis," going "line, by line, by line" through the billing records supporting the petition for attorneys' fees. Evans v. Port Auth. of New York & New Jersey, 273 F.3d 346, 362 (3d Cir. 2001). "A District Court is obligated to 'review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are "excessive, redundant, or otherwise unnecessary."'" Id. Furthermore, when determining the reasonableness of the hours expended, "the most critical factor is the degree of success obtained." Id. at 436. Here, the Court has gone "line, by line, by line" through Plaintiff's submitted billing records to determine their reasonableness. See Evans, 273 F.3d at 362. In evaluating the reasonableness of Plaintiff's proposed expended hours under Hensley, the Court will discuss Defendant's arguments in turn.

---

[10] In the Amended Complaint, Plaintiff alleged twelve (12) separate claims under Title VII, Section 1981, the ADA, and the PHRA. (See Doc. No. 24.) However, prior to trial, Plaintiff voluntarily dismissed five (5) of those claims. Thus, it is more accurate to say that Plaintiff brought seven (7) claims to trial.

[11] As noted supra, Plaintiff voluntarily dismissed five, not three of the claims.

### i.   Unsuccessful Claims

First, Defendant contends that Plaintiff should not recover attorneys' fees related to the work completed on any unsuccessful claims.  (Doc. No. 70-1 at 20.)  Defendant notes that Plaintiff initially brought twelve (12) claims, five of which were dismissed by Plaintiff before trial began.  (See id. at 6-7.)  At trial, Plaintiff only prevailed on one claim.  (See Doc. No. 66.)  Thus, Defendant argues that because Plaintiff was unsuccessful on almost all of the alleged claims, the attorneys' fee should be greatly reduced as it is unclear which claims counsel was working on from their time sheets.  (See id. at 23.)

In Hensley, the United States Supreme Court provided guidance for awarding attorneys' fees when claims are interrelated, overlapping, and based on a similar set of facts.  The Court opined as follows:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants . . . work on one claim will be unrelated to his work on another claim.  Accordingly, work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.' The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

> It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.

> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.

Hensley, 461 U.S. at 434-35.  Thus, the United States Supreme Court has held that attorneys' fees should not be awarded for work on unsuccessful claims which are "distinctly different" or "unrelated" to plaintiff's successful claims.  Id.  For example, the court in Blakey v. Continental Airlines, Inc. reduced attorneys' fees because the plaintiff succeeded on her discrimination claim, but not her defamation claim.  2 F. Supp. 2d 598, 605-06 (D.N.J. 1998).  The court held that "work on an unsuccessful claim that is based on distinctly different facts and theories cannot be compensated."  Id. at 605.  Because the plaintiff was pursuing her defamation claim in state court, it would be "unfair to expect [the defendant] to pay for work that benefits a completely separate lawsuit."  Id. at 606.

Here, Plaintiff's claims regarding disability discrimination and retaliation were not "distinctly different" or "unrelated" from the successful failure to accommodate claim.  Instead, Plaintiff's disability discrimination, failure to accommodate, and disability-based retaliation claims were interrelated as they all addressed Plaintiff's employment at J and G Spas and the circumstances of her termination following an accommodation request.  Unlike in Blakey where the claims were effectively "separate . . . lawsuit[s]" in separate courts, Plaintiff's disability-related claim relied on a common core of facts related to Plaintiff's disability under the ADA.

However, Plaintiff did not prevail on any race-based claim under the PHRA, Title VII, or Section 1981.  (See Doc. No. 66.)  And as the Supreme Court instructs, the Court should "focus on the significance of the overall relief obtained" and in the case of "limited success," even when the claims are "interrelated," "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  Hensley, 461 U.S. at 434-35.  Plaintiff was completely unsuccessful on any claims alleging race-based discrimination.  (See Doc. No. 66.)  Here, Plaintiff's counsels' billing sheets do not make any distinctions between time spent

on race-based claims and disability related claims.  (See Doc. No. 68-2 at 2-38.)  This task is an impossibility here given the common set of facts relevant to the different claims asserted.

Accordingly, because the most important factor in an analysis of reasonableness is "the degree of success obtained," and Plaintiff was wholly unsuccessful in any race-based allegation or theory of the case, the Court finds that the hours expended are unreasonable in light of Plaintiff's victory on only one claim.  Plaintiff concedes that a 5% reduction of the total fee is warranted based on their lack of success on the race-based claims, but this reduction does not adequately account for the result at trial.  The Court will therefore reduce the hours expended by counsel by a total of 50%.

### ii.    Excessiveness and Unnecessary Work

Defendant further asserts that the number of hours LELF expended on the trial are excessive.  (Doc. No. 70-1 at 21.)  To support this argument, Defendant raises multiple issues generally concerning excessiveness with Plaintiff's counsels' billing entries.

First, Defendant asserts that "Attorney Skelton's time (314 hours) is excessive compared to the claims at bar" and "Attorney Lacy's time is excessive (305 hours) compared to the claims at bar as well as his claim that he was supervising Attorney Skelton." [12]  (Id. at 20.)

The Third Circuit has held that, when evaluating the lodestar calculation, "the district court may not award less in fees than requested unless the opposing party makes specific objections to the fee request."  United States v. Eleven Vehicles, Their Equip. & Accessories, 200 F.3d 203, 211-12 (3d Cir. 2000).  Generalized, conclusory objections are insufficient to state specific objections to a fee request.  See Bayer CropScience AG v. Dow AgroSciences LLC, No. CV 12-

---

[12] As noted supra, following the post-trial briefing on the Petition for Attorneys' Fees, Plaintiff asserts that Lacy expended 309.6 hours, and Skelton expended 320.8 hours.  (Doc. No. 72 at 10.)

256 (RMB/JS), 2015 WL 108415, at *8 (D. Del. Jan. 5, 2015) (holding that the defendant's objections that the requested hours expended were "unreasonable and excessive" were "generalized conclusory objections" which did not warrant an adjustment of the hours claimed by plaintiff).

Here, Defendant first makes generalized objections to the excessiveness of Skelton and Lacy's hours without providing any specifics.  No detail is supplied to show why the hours are excessive.  Thus, the number of hours will not be reduced based upon this objection.

Second, Defendant notes that "[o]n April 17, 2024, the first day of trial, Attorney Lacy bills 27.6 hours." (Doc. No. 70-1 at 21.)  In Plaintiff's Reply, it is conceded that "[Defendant] did note . . . [a] discrepancy as Mr. Lacy's inadvertently entered time on April 17, 2024, twice; as such, Plaintiff voluntarily reduces her fee petition by 13.8 hours to account for this error." (Doc. No. 72 at 10, n. 7.)  Plaintiff has factored this discrepancy into her final fee petition in the Reply.  (Doc. No. 72 at 10.)  Accordingly, no further reduction in hours is warranted based on this objection.

Third, Defendant objects to Lacy's billing of "substantial time for 'managing court room dynamics,' where that seems to be in the purview of the Court." (Doc. No. 70-1 at 20.)  Here, on April 18, 2024, Lacy billed 12 hours for the following activities: "[m]anaged courtroom dynamics, adapting questioning techniques based on jury reactions and witness demeanor. Post-trial debrief focused on refining arguments for the next day and preparing for potential witnesses." (Doc. No. 68-2 at 19.)

During the course of a multi-day trial, courts generally find that billing entries detailing how the parties prepared and managed the circumstances arising at trial are sufficiently specific. See Devore v. City of Philadelphia, No. CIV.A. 00-3598, 2004 WL 414085, at *4 (E.D. Pa. Feb. 20, 2004); see also Giedgowd v. Cafaro Grp., LLC, No. CV 20-6184, 2021 WL 4963532, at *7

(E.D. Pa. Oct. 26, 2021).  For example, in <u>Devore v. City of Philadelphia</u>, defendants argued that entries such as "prep for trial, trial, prep for next day" were not sufficiently specific.  <u>Id.</u>  These entries were billed on days when trial was ongoing.  <u>Id.</u>  The court disagreed with defendants' arguments, noting that it was

> well aware of [plaintiff's counsel's] activities from 9:00 a.m. to 5:00 p.m. on these days as they are the dates of the trial.  Moreover, we are sure that certain pre-trial rulings affected [plaintiff's] strategy in presenting his case.  Thus he was required to regroup after those decisions.

<u>Id.</u>  Thus, the Court did not detract those hours from the lodestar calculation.  <u>See id.</u>

Here, while Defendant is correct that managing courtroom dynamics seems to be generally within the purview of the Court, not the parties, Plaintiff's entry is sufficiently specific to support the requested hours.  Coupled with Lacy's full description of the day, including "adapting questioning techniques based on jury reactions and witness demeanor . . . Post-trial debrief focused on refining arguments for the next day and preparing for potential witnesses," the Court can discern that the hours claimed are reasonable for the work performed.  <u>See</u> <u>Roccisano</u>, 2015 WL 3649149, at *7.  The entry objected to by Defendant occurred on April 18, 2024, in the midst of a multi-day trial.   And as the court stated in <u>Devore</u>, the Court had a front row seat to the work of Plaintiff's counsel from approximately 9:00 a.m. to 4:30 p.m. with short breaks each day of trial.  Having witnessed Lacy at trial on these days, this Court finds that these entries provide sufficient detail for meaningful judicial review and are reasonable.

Fourth, Defendant objects to the hours expended on the Motion for Leave to Amend Plaintiff's Complaint (Doc. No. 20) and the Sur-Reply to the Motion for Summary Judgment (Doc. No. 37).  (Doc No. 70-1 at 21-22.)  Defendant asserts that "Plaintiff's counsel wasted time on seeking Leave to Amend Plaintiff's Complaint in September 2023, and then dismissed most of the late added claims; . . .  Attorney Lacy bills almost 5 hours on his Motion to Amend the Complaint

to add PHRA claims." (Id. at 21.)  Further, Defendant argues that "Plaintiff's Counsel filed a Motion for Leave to file a Sur Reply to Motion for Summary Judgment which is not provided under the Rules of Court." (Id. at 22.)

Here, the Court will not reduce the number of hours to account for Plaintiff's filing of a Sur-Reply to the Motion for Summary Judgment.  The Court granted Plaintiff's Motion for Leave to File a Sur Reply which addressed Plaintiff's disability-related claims upon which she prevailed. (Doc. No. 34.)  Therefore, the Court will not reduce the hours expended based upon this objection. However, the Court will reduce the number of hours Plaintiff's counsel worked on the Amended Complaint as those claims were later withdrawn by Plaintiff and were unsuccessful.  Thus, the Court will reduce Plaintiff's expended hours by 15.3 hours (2.5 hours for Skelton, 12.8 hours for Lacy).

Fifth, Defendant objects to counsel's entries regarding the organization of exhibits and extensive trial preparation work.  (Doc. No. 70-1 at 20-22.)  Defendant contends that "Counsel claims to 'organize schedule of exhibits' when Plaintiff proposed no timely exhibits and relied on all of the exhibits at trial marked and served by [Defendant]." (Id. at 22.)  Further, "Attorney Lacy bills exorbitant time on the trial days (11-13 hours) as well as extensive preparation work . . ." (Id. at 20.)

As trial approaches, it is reasonable to expect that lead trial attorneys presenting evidence to a jury will spend significant time immersed in trial exhibits.  See Sec. & Data Techs., Inc. v. Sch. Dist. of Philadelphia, No. CV 12-2393, 2016 WL 7427758, at *13 (E.D. Pa. Dec. 20, 2016). For example, In Sec. & Data Techs., Inc., the defendant objected to the plaintiff's proposed hours expended because the lead trial attorney "billed . . . for clerical work." Id.  However, the court disagreed, finding that "revising trial exhibits . . . is exactly what lead counsel should be doing."

Id.  Likewise, in Ray v. AT&T Mobility Servs., LLC, the defendant objected to plaintiff counsel's hours expended in preparation for trial.  No. CV 18-3303, 2022 WL 1203730, at *4.   The court overruled defendant's objection, noting that "this was a difficult case to present to a jury . . . it was necessary for [plaintiff's lead trial attorney] to take the time she deemed necessary to present the case in a convincing and understandable way to the jury."  Id.

Trial attorneys are critical to modern law practice and a crucial part of our system of justice. So this Court will not engage in second guessing the necessary work of trial attorneys when familiarizing themselves with trial exhibits.  Lacy and Skelton reasonably took time to familiarize themselves with trial materials to present for the jury.  Delegating such tasks to a paralegal or junior associate would not enable them to prepare for trial in an effective way.  Therefore, the number of hours will not be reduced based on this objection.

Sixth, Defendant objects to time counsel spent traveling to and from the courthouse.  (See Doc. No. 70-1 at 20.)  Specifically, Defendant argues that "Attorney Skelton bills each day for travel time without breaking out the travel time from the billing time."  (Id.)  Generally, time spent traveling is compensable as a cost "so long as [it is] reasonable and necessary to the litigation." Middlebrooks v. Teva Pharms. USA, Inc., No. CV 17-412, 2019 WL 936645, at *19 (E.D. Pa. Feb. 26, 2019).  However, in the disputed entries, Skelton commingles travel to and from New Jersey with the billable work carried out in the trial.  For example, Skelton billed 10.7 hours when he:

> Participated in the first day of trial which involved jury selection and voir dire, crucial for establishing the foundation of the jury's composition. Assisted co-counsel in refining our opening argument and preparing for cross-examination strategies. These activities were key in setting the tone for our case presentation and ensuring that our legal team was aligned and prepared to engage effectively with the jury and opposing counsel. **Also time included for travel from New Jersey to Philadelphia.**

26

(Doc. No. 68-2 at 3) (emphasis added).  This kind of entry appears multiple times in Skelton's billing records.  (See id. at 2-4.)

In Evans, the Third Circuit Court of Appeals noted that a district court must "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"  273 F.3d at 362.  Having reviewed counsel's requested hours, the Court finds that multiple hours spent traveling to and from the courthouse are unreasonably excessive when billed at Skelton's hourly rate—here, $315.  Such hours are more reasonably factored into the costs sought by counsel, akin to parking costs.  Accordingly, the Court will reduce the entries on the trial days where Skelton billed for travel to and from New Jersey by 18 percent and consequently subtract 10 hours from Attorney Skelton's time.

Finally, this Court has examined the entries in the billing records regarding legal research that Defendant claims are excessive or unnecessary.  They are not.  Thus, the Court will not deduct hours from the lodestar calculation for excessive legal research.

### 3.     The Lodestar will be Reduced by 30% to Account for Plaintiff's Limited Success

Finally, the Court must determine whether it should make an upward or downward adjustment to the lodestar based on other considerations.  See Hensley, 461 U.S. at 434.  Defendant requests that this Court substantially reduce Plaintiff's fee award to account for Plaintiff's limited success at trial.  (See Doc. No. 70-1 at 17.)

The Court may, in its discretion, "adjust a fee upward or downward" based upon "the important factor of the results obtained" in a case.  Hensley, 461 U.S. at 434. This adjustment "should be taken independently of other adjustments and should be the first adjustment applied to

the lodestar." Rode, 892 F.2d at 1183.  Furthermore, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley, 461 U.S. 424, 435.

Here, Plaintiff did not achieve an excellent result at trial—far from it.  Having brought seven claims to trial, including race discrimination under Section 1981, Title VII, and the PHRA, disability discrimination under the ADA and PHRA, failure to accommodate under the ADA, and disability-based retaliation under the ADA and PHRA, Plaintiff prevailed only on a single claim: failure to accommodate under the ADA.  (Doc. No. 66.)  Further, the jury awarded Plaintiff only $500 when Plaintiff sought compensatory and punitive damages of approximately $345,000, as set forth in Plaintiff's Pre-Trial Memorandum (Doc. No. 48 at 5).  (See Doc. No. 66.)  As noted supra, the most important factor in the lodestar analysis is "the degree of success obtained." Hensley, 461 U.S. at 436.  Further, the Third Circuit Court of Appeals has held that when adjusting the lodestar, there is "no precise rule or formula" and the court may "simply reduce the award to account for the limited success." Id. at 436-437; see also Haymond v. Lundy, 205 F. Supp. 2d 403, 410 (E.D. Pa. 2002) (reducing the overall attorneys' fee award by 30% to reflect the limited results obtained); Tartaglia v. Big Apple Consulting USA, Inc., No. 6:09-CV-591-ORL-28, 2011 WL 6937465, at *10 (M.D. Fla. Nov. 22, 2011), report and recommendation adopted, No. 6:09-CV-591-ORL-258, 2012 WL 11115 (M.D. Fla. Jan. 3, 2012) (reducing lodestar by 25% to account for limited success at trial); Denton v. PennyMac Loan Servs., LLC, 252 F. Supp. 3d 504, 530-31 (E.D. Va. 2017) (reducing fees by 40% to reflect minimal financial award obtained).

Here, the Court will make a downward adjustment of 30% to the lodestar to account for Plaintiff's slim victory at trial.  Plaintiff brought seven claims and prevailed on one.  Such limited success warrants a substantial fee reduction.  Thus, a final downward adjustment of 30% would result in a final award of attorneys' fees of **$85,930.10**, as provided below.

| Attorney | Requested Rate | Requested Hours | Allowed Rate | Allowed Hours | Allowed Total |
|---|---|---|---|---|---|
| Andrew Lacy, Esq. | $500 | 309.6 | $500 | 148.4 | $74,200 |
| Austin Skelton, Esq. | $315 | 320.8 | $315 | 154.15 | $48,557.25 |
| TOTAL (subject to adjustment for results) | | | | | $122,757.25 |
| Less 30% | | | | | ($36,827.18) |
| **Adjusted Total** | | | | | **$85,930.10** |

### B.  Plaintiff is Entitled to Reasonable Costs Incurred

Plaintiff also seeks $3,738 in costs and expenses incurred on account of this action.  (See Doc. No. 68-1 at 5.)  Defendant objects to Plaintiff's petition for costs and expenses.  (See Doc.70-1 at 23.)  In particular, Defendant asserts that the proposed costs are excessive, noting that "two mock jury sessions" were unnecessary when "Lacy[] asserts he is a leading expert in employment law and jury trials."  (Id. at 23.)

Title VII, Section 1981, and the ADA all provide for the award of costs to a prevailing plaintiff.  See 42 U.S.C. § 2000e-5; 42 U.S.C. § 1988; 42 U.S.C. § 12205.  Generally, costs of

litigation must be reasonable and appropriate.  See Gen. Instrument Corp. of Del. V. Nu-Tek Elec. & Mfg., Inc., 197 F.3d 83, 92 n. 6 (3d Cir. 1999).

Here, Plaintiff's costs for activities such as "filing," "depositions," "printing," "parking," and "mock jury sessions" are "reasonable and necessary to the litigation."  See Middlebrooks, 2019 WL 936645, at *19.  Specifically, the Court finds that enlisting mock jurors to prepare for trial is a reasonable and effective preparation for the rigors of opening, closing, direct examination, and cross-examination.  Therefore, the Court will award Plaintiff $3,738 in costs.

**IV.    CONCLUSION**

Based on the foregoing reasons, Plaintiff's Petition for Attorneys' Fees and Costs (Doc. No. 68) will be granted in part and denied in part.  Plaintiff is hereby awarded **$85,930.10** in attorneys' fees.  Further, Plaintiff is awarded **$3,738** in costs.  Accordingly, Defendant will be ordered to pay Plaintiff a total sum of **$89,668.10** in attorneys' fees and costs.  An appropriate Order follows.